IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOEL DIAZ-NIEVES; GIOVANNY DIAZ-
NIEVES; AIDA NIEVES-PEREZ AND
SAUL DIAZ-RODRIGUEZ,

    **Plaintiffs,**

        **v.**

THE UNITED STATES OF AMERICA,

    **Defendant.**

**Civil No.** 13-1219 (FAB)

MEMORANDUM AND ORDER[1]

BESOSA, District Judge.

Before the Court is the United States ("US")'s motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) ("Rule 12(b)(6)"). (Docket No. 27.) Joel Diaz-Nieves ("Joel Diaz"), Giovanny Diaz-Nieves ("Giovanny Diaz"), Aida Nieves-Perez ("Aida Nieves"), and Saul Diaz-Rodriguez ("Saul Diaz" and, together with Joel Diaz, Giovanny Diaz, and Aida Nieves, "plaintiffs") opposed US's motion on December 27, 2013. (Docket No. 30.) For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** US's motion.

I.   BACKGROUND

As required by the standard Rule 12(b)(6) analysis, the Court treats as true the following non-conclusory factual allegations

---

[1] Matthew D'Auria, a second-year law student at the University of Virginia School of Law, assisted in the preparation of this Memorandum and Order.

from plaintiffs' complaint, see Ocasio-Hernandez v. Fortuño-Burset,
640 F.3d 1, 17 (1st Cir. 2011):

Plaintiffs are residents of the same community located in
Moca, Puerto Rico. (Docket No. 5 at p. 1.) At approximately 4:00
a.m. on October 6, 2010, plaintiffs were sleeping in their
respective houses when a group of agents from the Federal Bureau of
Investigation ("FBI"), acting pursuant to a valid arrest warrant,
surrounded the house occupied by Joel Diaz, his father Saul Diaz,
and his mother Aida Nieves. Id. at p. 2. Mr. Saul Diaz was the
first person to react to the intervention and, upon opening the
door of the house, was removed from the home and made, at gun
point, to stand against a wall. Id. At some point during his
removal from the house, Mr. Saul Diaz's pants fell to the ground.
Because the agents did not allow him to readjust his clothing,
Mr. Saul Diaz was left standing naked in the street. Id. at p. 3.
The agents also removed Ms. Aida Nieves from the home and forced
her, at gunpoint, to face a wall beside the kitchen. Id. at p. 4.
Upon hearing shouting from outside, Mr. Joel Diaz, an employee of
the Puerto Rico Corrections Department, quickly located his work
weapon and made his way to the front door, where he observed dozens
of laser target guides from multiple positions illuminating his
body. Id. at p. 3. At that time, Mr. Joel Diaz dropped to the
floor in surrender and was arrested by the agents. Id.

Without informing him of the reasons for his arrest, the agents escorted Joel Diaz to a green Toyota Yaris. (Docket No. 5 at p. 3.)  At some point during the ensuing trip, Joel Diaz asked the driver to stop so that he could relieve himself on the side of the road.  Id.  When the driver eventually stopped, Joel Diaz asked the FBI agents the reason for his detention, and was told that he had been charged with drug trafficking.  Id.  When Joel Diaz denied this charge, one of the agents showed him a photograph that purportedly depicted him as the person involved in drug violations. Id.  Joel Diaz immediately informed the agent that he was not the individual shown in the photo, and that the FBI agents had mistaken him for another person.  Id.  At that time, Joel Diaz also informed the agent that his name did not match the name of the alleged suspect whose arrest the agents were authorized to execute.  Id.[2] The agent, after comparing Mr. Joel Diaz with the individual in the picture, expressed doubt about their similarity.  Id.  Nevertheless, the agent insisted that there was nothing he could do and that Joel Diaz should explain the situation to the supervising agents.  Id. Agents took Joel Diaz to a parking lot and transferred him to a minivan.  Id. at pp. 3-4.  He reaffirmed to the FBI agents that

---

[2]  The Court notes that the indictment, which plaintiffs attached to their complaint, names co-plaintiff "Joel Diaz-Nieves" as a defendant.  (Docket No. 1-4.)  Plaintiffs, however, did not attach the arrest warrant to the complaint.  Given the name in the indictment, the Court has no basis from which to reasonably infer that the arrest warrant subsequently issued named someone else — Jose Velez-Nieves.

they had arrested the wrong individual, and was again told that there was nothing that could be done, but that, if he was right, he should "sue the agency for all it was worth." Id. at p. 4.

Later that day, agents transported Joel Diaz to FBI facilities where he was processed, fingerprinted, and interviewed by federal agents. (Docket No. 5 at p. 4.) During this time, he continually insisted that he was innocent, but the agents ignored his claims and declined to compare his identity with that of the alleged suspect, Jose M. Velez-Nieves. Id. After being processed, Joel Diaz was imprisoned in the Metropolitan Detention Center in Guaynabo for three days. Id. In the meantime, Mr. Saul Diaz, Ms. Aida Nieves and Mr. Giovanny Diaz, confused by the arrest of Joel Diaz and concerned about how the incident would impact their family's reputation in the small Moca community, retained a lawyer, Mr. Fernando Irizarry, and paid him $13,000.00 for his services. Id. at p. 5. They also paid fees for the appraisal of several properties that would have been needed to secure bail for Joel Diaz. Id. at pp. 5-6. On October 9, 2010, however, three days after the arrest, the government confirmed that the FBI agents had in fact arrested the wrong individual, and released Joel Diaz. Id. at p. 6. On October 14, 2010, the Court dismissed the indictment against Joel Diaz. (Docket No. 5-2 at p. 3.)

Plaintiffs filed this complaint on March 14, 2013, alleging that defendant's negligent investigation, which resulted in the

false arrest and false imprisonment of Joel Diaz, constituted
tortious conduct pursuant to Puerto Rico law and the Federal Tort
Claims Act ("FTCA").[3]

## II.  Discussion

### A.   Motion to Dismiss Standard

Rule 12(b)(6) allows the Court to dismiss a complaint
when the pleading fails to state a claim upon which relief can be
granted.  Fed. R. Civ. P. 12(b)(6).  When considering a motion
pursuant to Rule 12(b)(6), the Court is "obligated to view the
facts of the complaint in the light most favorable to the
plaintiffs, and to resolve any ambiguities in their favor."
Ocasio-Hernandez, 640 F.3d at 17.  While detailed factual
allegations are not necessary to survive a motion to dismiss, "[a]
plaintiff is not entitled to 'proceed perforce' by virtue of
allegations that merely parrot the elements of the cause of
action."  Id. at 12 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 680
(2009)).  Any "[n]on-conclusory factual allegations in the

---

[3] Though the complaint alleges violations of plaintiffs' civil
and constitutional rights pursuant to the Fourth, Fifth, and
Fourteenth Amendments to the United States Constitution (see Docket
No. 5 at ¶¶ 4.2-4.3), neither party subsequently mentions these
claims.  Furthermore, in order to bring a Bivens action for
constitutional violations successfully, a plaintiff must sue the
federal officials in their individual capacities.  See Santoni v.
Potter, 369 F.3d 594, 598 (1st Cir. 2004).  Because plaintiffs only
sued the United States, and their allegations support tort claims,
rather than constitutional violations, the Court reads the
complaint only to allege violations sounding in tort against the
United States pursuant to the FTCA.

Civil No. 13-1219 (FAB)                                              6

complaint[, however,] must . . . be treated as true, even if
seemingly incredible." Ocasio-Hernandez, 640 F.3d at 12 (citing
Iqbal, 556 U.S. at 681).  An adequate complaint "must contain
sufficient factual matter to state a claim to relief that is
plausible on its face." Grajales v. P.R. Ports Auth., 682 F.3d 40,
44 (1st Cir. 2012) (internal quotation marks and citation omitted).
The complaint need not plead facts sufficient to establish a *prima
facie* case, but "the elements of a *prima facie* case may be used as
a prism to shed light upon the plausibility of the claim."
Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir.
2013).  A court, however, may not "attempt to forecast a
plaintiff's likelihood of success on the merits; 'a well-pleaded
complaint may proceed even if . . . a recovery is very remote and
unlikely.'" Ocasio-Hernandez, 640 F.3d at 13 (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Overall, "[t]he
relevant inquiry focuses on the reasonableness of the inference of
liability that the plaintiff is asking the court to draw from the
facts alleged in the complaint." Id. at 13.

   **B.   Negligent Investigation**

        Plaintiffs' complaint asserts that the US is liable for
the "negligent investigation into the identity and whereabouts of
Jose M. Velez Nieves A/K/A Pito prior to executing the arrest
warrant for him." (Docket No. 5 at p. 6.)  The US argues that
plaintiffs' negligent investigation claim must be dismissed because

investigative activity is protected by the discretionary function
exception to the FTCA, codified at 28 U.S.C. § 2680(a).  (Docket
No. 27 at p. 5.)

## 1.   Discretionary Function Exception

When it enacted the FTCA, the United States waived
its sovereign immunity for:

> injury or loss of property . . . caused by the negligent
> or wrongful act or omission of any employee of the
> Government while acting within the scope of his office or
> employment, under circumstances where the United States,
> if a private person, would be liable to the claimant in
> accordance with the law of the place where the act or
> omission occurred.

28 U.S.C. § 1346(b)(1).   The liability of the United States
government under the FTCA, however, is subject to the various
carve-outs contained in 28 U.S.C. § 2680, including the
"discretionary function" exception.   That exception provides, in
pertinent part, that the federal government's waiver of sovereign
immunity through the FTCA shall not extend to "[a]ny claim . . .
based upon the exercise or performance or the failure to exercise
or perform a discretionary function or duty on the part of a
federal agency or an employee of the Government, whether or not the
discretion involved be abused."   28 U.S.C. § 2680(a).   The
exception's essential purpose is to reduce the amount of second-
guessing that government employees experience, and to allow them to
carry out their responsibilities without a constant fear of
spawning litigation.   See United States v. S.A. Empresa de Viacao

Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808-14 (1984);
Nogueras-Cartagena v. United States, 172 F. Supp. 2d 296, 317
(D.P.R. 2001) (Dominguez, J.).  When a given claim falls within the
discretionary function exception, it must be dismissed for lack of
subject matter jurisdiction.  Abreu v. United States, 468 F.3d 20,
25 (1st Cir. 2006) (internal citation omitted); Kelly v. United
States, 924 F.2d 355, 359-360 (1st Cir. 1991).

          Courts employ a two-part test to determine whether
the discretionary function exception to the FTCA covers the
challenged conduct.  United States v. Gaubert, 499 U.S. 315, 322-23
(1991); Kelly, 924 F.2d at 360 (internal citations omitted).
First, a court must determine if the behavior at issue is in fact
discretionary in nature.  Kelly, 924 F.2d at 360.  This factor
generally requires an analysis of whether the government employee's
duties obligate him or her to make independent decisions. Berkovitz
by Berkovitz v. United States, 486 U.S. 531, 536 (1988); Kelly, 924
F.2d at 360; K.W Thompson Tool Co. v. United States, 836 F.2d 721,
725 (1st Cir. 1988). Second, because the exception "protects only
governmental actions and decisions based on considerations of
public policy," Berkovitz, 486 U.S. at 537, courts must determine
whether "some plausible policy justification could have undergirded
the challenged conduct." Shansky v. United States, 164 F.3d 688,
692 (1st Cir. 1999).

The First Circuit Court of Appeals has never directly addressed whether a claim of negligent investigation would be barred by the discretionary function exception under the two-prong test outlined above. Nevertheless, it has clearly indicated that, "[s]ince decisions to investigate, or not, are at the core of the law enforcement activity," investigative activity involves the type of "policy-rooted decisionmaking that section 2680(a) was designed to safeguard." Kelly, 924 F.2d at 362. Consequently, this Court has found that "allegations of negligent investigation against the United States fall within the discretionary function exception of the FTCA and are barred for lack of subject matter jurisdiction." Nogueras-Cartagena, 172 F. Supp. 2d at 319. See also Torres-Dueño v. United States, 165 F. Supp. 2d 71, 74 (D.P.R. 2001) (Laffitte, J.).

### 2.   Application

Plaintiffs argue that the arrest of Joel Diaz was entirely "due to the negligence of the FBI agents who failed to carry out the agency's rules and regulations regarding the proper determination of a suspect's identity and his whereabouts." (Docket No. 5 at p. 7.)  In accordance with the relevant precedent, however, the Court holds that plaintiffs' specific allegations of negligent investigation are jurisdictionally barred by the discretionary function exception to the FTCA.  Accordingly, the

Court **GRANTS** US's motion to dismiss plaintiffs' negligent investigation claim.

### C.   False Arrest and False Imprisonment

Plaintiffs' complaint also asserts a cause of action for the "wrongful arrest and incarceration" of Joel Diaz, which was "proximately caused by the failure of the investigating FBI agents of properly following up with the cooperating sources regarding the true identity of the individual to be arrested." (Docket No. 5 at p. 6.)  The US argues that this claim must be dismissed because the conduct of the arresting FBI agents was conditionally privileged pursuant to Puerto Rico law.  Specifically, the US asserts that Joel Diaz was sufficiently named in a valid arrest warrant and the FBI agents had no reason to doubt his identity at the time of his arrest and detention.

### 1.   Basis for False Arrest and False Imprisonment Claims Pursuant to the FTCA

Although the FTCA exempts so-called "intentional torts" from the federal government's general waiver of sovereign immunity, it expressly permits actions against the United States for claims of "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" that arise from the "acts or omissions of investigative or law enforcement officers of the United States Government."  28 U.S.C. § 2680(h).  See also Solis-Alarcon v. United States, 662 F.3d 577, 583 (1st Cir. 2011); Abreu-Guzman v. Ford, 241 F.3d 69, 75 (1st Cir. 2001).

Additionally, to the extent that the FTCA proviso waiving sovereign immunity for the claims specified above overlaps or conflicts with the FTCA's discretionary function exception, the Court holds that the proviso governs.  See Paret-Ruiz v. United States, 943 F. Supp. 2d 285, 290-291 (D.P.R. 2013) (Gelpi, J.) (adopting the position of the Fifth and Eleventh Circuit Courts of Appeals).  The discretionary function exception does not, therefore, bar a person's claims for false arrest or false imprisonment because the FTCA's explicit waiver of immunity for those claims trumps the discretionary function exception.  Id.  Thus, in this case, the United States is liable, "in the same manner and to the same extent," for the false arrest and false imprisonment of Joel Diaz, as a private individual would be in like circumstances under the relevant state law.  Rodriguez v. United States, 54 F.3d 41, 44 (1st Cir. 1995) (quoting 28 U.S.C. § 2674).

        The FTCA further provides that the "law of the place" where the act or omission occurred shall govern actions for damages against the federal government.  28 U.S.C. § 1346(b)(1). Because the material acts and omissions alleged in the complaint took place in Puerto Rico, the Court applies Puerto Rico law to plaintiffs' tort claims against the United States.  See Abreu-Guzman, 241 F.3d at 75; Nogueras-Cartagena, 172 F. Supp. 2d at 312.

Civil No. 13-1219 (FAB)                                          12

        A claim of false arrest and false imprisonment
accrues under Puerto Rico law when "[a] person, whether or not a
law enforcement officer, . . . by himself or through another one
unlawfully detain[s] or cause[s] the unlawful detention of another
person." Ayala v. San Juan Racing Corp., 12 P.R. Offic. Trans.
1012, 1021.    Additionally, because false arrest and false
imprisonment claims pursuant to Puerto Rico law share identical
elements and therefore raise no relevant distinction in this case,
the Court treats them as identical causes of action.   See
Abreu-Guzman, 241 F.3d at 75 (internal citation omitted);
Rodriguez, 54 F.3d at 44.

        **2.    Legal Standard in Cases of False Arrest Through
              Misidentification**

        This case involves a false arrest claim based on the
execution of a valid arrest warrant against the wrong individual.
Defendant argues, citing the First Circuit Court of Appeals'
opinion in Rodriguez, that Puerto Rico law recognizes a qualified
immunity defense for federal officers involved in these
misidentification cases.  In Rodriguez, the First Circuit Court of
Appeals held that federal agents were protected by the doctrine of
"conditional privilege" as long as "the arrestee was (a) . . . a
person sufficiently named or otherwise described in the warrant *and*
[was] reasonably believed by the [officer] to be, the person
intended, *or* (b) although not such person, . . . knowingly caused
the actor[s] to believe [her] to be so." Rodriguez, 54 F.3d at 46

(emphasis in original).  This decision, however, was not based on any concrete, established provisions of Puerto Rico law.  Noting a lack of Puerto Rico Supreme Court decisions addressing false arrest claims based on misidentification, the First Circuit Court of Appeals looked to common law principles to fill in the gaps of Puerto Rico's false arrest jurisprudence.  <u>Id.</u> at 45.  Conditional privilege, a principle endorsed by the Restatement of Torts, consequently became a default provision of Puerto Rico law.  <u>See id.</u>[4]

Since <u>Rodriquez</u>, the Puerto Rico Supreme Court has directly addressed the issue of misidentification and articulated a different legal standard for cases involving a false arrest made pursuant to a valid warrant.  <u>See</u> <u>Valle v. E.L.A.</u>, 2002 TSPR 64 (2002) (official translation).  Emphasizing the importance of "the constitutionally protected right to liberty enjoyed by our fellow citizens," the Puerto Rico Supreme Court has affirmed that it "*cannot* consent to the deprivation of a person's liberty merely because said person has 'some resemblance' to someone responsible

---

[4] Section 122 of the Restatement provides that:  "subject to the rules stated in §§ 127-132, the actor is privileged to arrest another under a warrant if such warrant is either valid or fair on its face."  Restatement (Second) of Torts § 122 (1965).  Section 125 of the Restatement further establishes that:  "An arrest under a warrant is not privileged unless the person arrested (a) is a person sufficiently named or otherwise described in the warrant and is, or is reasonably believed by the actor to be, the person intended, or (b) although not such person, has knowingly caused the actor to believe him to be so."  <u>Id.</u> at § 125.

for a criminal act." <u>Id.</u> (emphasis in original).  Accordingly,

that court has found it necessary in false arrest cases to engage

in a "balance of the interests," to "strike a *fair and appropriate*

*balance* between the right of the State to act vigorously in the

investigation and prosecution of criminal causes [sic] and the

right to liberty of our fellow citizens, a right that enjoys the

highest constitutional rank in our jurisdiction." <u>Id.</u> (emphasis in

original).

### 3.  Application

Because the "law of the place" where the act or

omission occurred governs actions for damages against the federal

government pursuant to the FTCA, the Court now replaces <u>Rodriguez</u>'s

emphasis on conditional privilege with the balancing standard

subsequently articulated by the Puerto Rico Supreme Court in

<u>Valle</u>.[5] Additionally, because the FTCA proviso specifically waives

sovereign immunity for false arrest and false imprisonment claims

against the United States, the Court need not address the

_____

[5] Although the First Circuit Court of Appeals has mentioned
<u>Valle</u>, it has never directly addressed whether the false arrest
standard articulated in <u>Rodriguez</u> and its progeny ought to be
replaced by the Supreme Court of Puerto Rico's balancing test in
<u>Valle</u>.  <u>Solis-Alarcon v. United States</u>, 662 F.3d 577 (1st Cir.
2011).  In <u>Solis-Alarcon</u>, the First Circuit Court of Appeals held
that Puerto Rico tort law did not impose personal liability for
mistaken arrests where police officers would be protected in <u>Bivens</u>
claims by qualified immunity.  <u>Id.</u> at 583.  Because this case does
not involve <u>Bivens</u> claims or a qualified immunity defense, <u>Solis-
Alarcon</u> does not govern the Court's analysis.

application of the FTCA's discretionary function exception here.
Paret-Ruiz, 943 F. Supp. 2d at 290-91.

        To determine the proper balance of the interests at
issue in this case, the Court must engage in a fact-specific
analysis of the circumstances surrounding both the probable cause
determination and the execution of the arrest warrant.  Viewing the
allegations contained in the complaint in the light most favorable
to plaintiffs, the Court finds that the complaint sufficiently
states a claim for false arrest and false imprisonment that is
plausible on its face.  The complaint alleges that, in the middle
of the night on October 6, 2010, FBI agents acting pursuant to a
valid arrest warrant seized Mr. Joel Diaz from his home in Moca,
Puerto Rico, terrorizing his family in the process.  Although the
agents admitted to having doubts about Mr. Joel Diaz's identity
when he declared his innocence, they continued to execute the
arrest, informing Joel Diaz that he should "sue the agency for all
it was worth" if they were in fact mistaken.   The agents
fingerprinted, interviewed, and then incarcerated Mr. Joel Diaz for
three days without taking adequate steps to confirm his identity.
Several weeks after Joel Diaz's discharge, the FBI indicted and
arrested Jose Velez-Nieves, the individual for which the government
had mistaken Joel Diaz.

        Given those allegations, summary judgment would be
a more appropriate vehicle to determine whether plaintiffs, for

example, had produced genuine issues of fact regarding (1) whether
the grand jury indictment against Mr. Joel Diaz was wrongfully
obtained, see Paret-Ruiz, 943 F. Supp. 2d at 291 (noting that a
grand jury indictment obtained through perjury does not definitely
establish probable cause for an individual's arrest); or (2)
whether the arrest warrant was executed negligently, see Valle,
2002 TSPR 64 (indicating that the existence of a valid arrest
warrant is not sufficient to insulate agents from liability when
they fail to comply fully with essential identification procedures
prior to, or during, an arrest).  Regardless of the approach
adopted by plaintiffs, the Court's ultimate task will be to weigh
the evidence presented by each side in order to "strike a fair and
appropriate balance" of the interests in conflict here.  Because
that process cannot be completed at the motion to dismiss stage,
the Court **DENIES** defendant's motion to dismiss plaintiffs' claim of
false arrest and false imprisonment.

## III. Conclusion

For the reasons expressed above, the defendant's motion to
dismiss, (Docket No. 27), is **GRANTED IN PART** and **DENIED IN PART**.
The Court **GRANTS** defendant's motion with regard to plaintiffs'
claim of negligent investigation, but **DENIES** defendant's motion

Civil No. 13-1219 (FAB)                                                    17

with respect to plaintiffs' claim of false arrest and false

imprisonment.[6]

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 9, 2014.

                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE

---

[6] Defendant did not move to dismiss any claims brought by co-plaintiffs Giovanny Diaz, Aida Nieves, and Saul Diaz.  The Court declines to address those claims *sua sponte*.