## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**JOEL DIAZ-NIEVES**, *et al*.,

      Plaintiffs,

      v.                                                    Civil No. 13-1219 (BJM)

**UNITED STATES OF AMERCIA**,

      Defendant.

### OPINION AND ORDER

In this action under the Federal Tort Claims Act ("FTCA"), Joel Diaz-Nieves ("Joel Diaz"), his mother Aida Nieves-Perez ("Nieves"), his father Saul Diaz-Rodriguez ("Saul Diaz"), and his brother Giovanny Diaz-Nieves (Giovanny Diaz) (collectively, "plaintiffs") sued the government for damages arising out of Joel Diaz's arrest on October 6, 2010. Docket No. 1.  Before the court is the government's motion for partial summary judgment.[1] Docket No. 45 ("Mot.").  Plaintiffs opposed and presented a cross-motion for partial summary judgment.  Docket No. 54 ("Resp.").  The government opposed.  Docket No. 61. The case is before me by consent of the parties.  Docket No. 37.  For the reasons that follow, the government's motion is **GRANTED** and plaintiffs' cross-motion for partial summary judgment is **DENIED**.

### STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" only if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and "[a] 'genuine' issue is one that could be resolved in favor of either party."  *Calero-Cerezo*

---

[1] The government titles its motion as a motion for summary judgment.  However, its discussion is limited to Joel Diaz's claims and does not move for summary judgment as to any claims brought by co-plaintiffs Nieves, Saul Diaz, and Giovanny Diaz.  As such I shall treat the motion as a motion for partial summary judgment as to Joel Diaz's claims.

*v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).  The court does not weigh the facts but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which it believes demonstrate the absence of a genuine issue of material fact."  *Crawford-El v. Britton*, 523 U.S. 574, 600 n.22 (1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1).  If this threshold is met, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts" to avoid summary judgment.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party may not prevail with mere "conclusory allegations, improbable inferences, and unsupported speculation" for any element of the claim.  *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).  Still, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," *Leary*, 58 F.3d at 751, and the court must not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record."  *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987).

## BACKGROUND

The factual background of this case is drawn from the government's statement of undisputed facts, plaintiffs' counterstatement of undisputed facts, and plaintiffs' statement of additional facts.  Docket No. 46 ("SUF"); Docket No. 51, at 1-10 ("CUF"); Docket No. 51, at 11-12 ("SAF").[2]

---

[2] These documents were filed pursuant to Local Rule 56, which requires that motions for summary judgment be supported by a statement of material facts that the moving party contends are undisputed, each of which must be supported by a citation to the record.  Local Rule 56(b).  The nonmoving party must likewise submit an opposing statement admitting, denying, or qualifying the facts supporting the summary judgment motion.  Local Rule 56(c).  This opposing statement may

The FBI, in coordination with the United States Attorney's Office for the District of Puerto Rico, engaged in a public corruption investigation known as Operation Guard Shack.   SUF ¶ 1.[3]   This investigation produced accusations against, among others, correctional officers who provided security to drug traffickers.  *Id.*

Joel Diaz, a corrections officer for the Puerto Rico Department of Corrections and Rehabilitation ("DOC"), was identified as a suspect when an individual, later identified as Jose Nieves-Velez ("Velez"), approached the FBI's confidential human source ("CHS") to be hired as a security for a drug transaction, "Deal 105," under the name Joel Diaz-Nieves. SUF ¶¶ 2-3, 5.[4]   Velez continued to identify himself as Joel Diaz-Nieves throughout the

---

contain a list of additional facts supported by record citations.  *Id.*  Facts contained in either the moving or nonmoving party's statements, if supported by record citations, are deemed admitted unless properly controverted.  Local Rule 56(e).  Any fact may be disregarded by the court if not supported by a specific citation to record material properly considered on summary judgment.  *Id.* "The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statements of facts."  *Id.*

As the government notes, plaintiffs have violated Local Rule 56 by failing to properly cite to supporting record material in their statement of additional facts.  Docket No. 63.  Though plaintiffs cite to various exhibits attached to their opposition, most simply do not support the facts to which they purportedly correspond.  Specifically, the facts asserted in paragraphs 2 through 9 of plaintiffs' statement of additional facts are unsupported, and I elect to disregard them.  *See* SAF ¶¶ 2-9.

[3] This fact and many others in the government's Local Rule 56 statement are supported by the government's answers to plaintiffs' interrogatories.  Docket No. 46-1.  Plaintiffs raise several objections to these answers as a whole.  First, they argue that they are inadmissible for being unsworn.  The answers were prepared by Special Agent ("S/A") Norman Quilinchini ("Quilinchini") under "penalty of perjury pursuant to the best of [his] knowledge and records."  *Id.* at 10.  Being answered under penalty of perjury, I find that it is in compliance with Federal Rule of Civil Procedure ("Rule") 33(b)(3).

Plaintiffs also object that the answers are unauthenticated.  Federal Rule of Evidence 901(a) requires that a proponent must produce evidence supporting a finding that the item is what the proponent claims it is.  Plaintiffs have not stated, nor do I believe they mean to, that they are questioning the fact that the government's answers to interrogatories are, in fact, answers to interrogatories.  This objection is therefore misplaced.

Plaintiffs finally object that the answers are not made on personal knowledge.  But plaintiffs' own evidence shows that Quilinchini was the S/A in charge during the investigation of Joel Diaz.  Docket No. 51-3, at 2.  Additionally, Quilinchini was the co-handler for the CHS involved in Deal 105.  Docket No. 46-1, at 6.  Consequently, it can be readily inferred that Quilinchini was intimately familiar with Deal 105, its participants, and the events leading up to Joel Diaz's arrest.  The answers are based on personal knowledge and admissible.

[4] Plaintiffs object that the answers to interrogatories supporting these facts are inadmissible hearsay.  The challenged answers state that an unknown person told the CHS, who in turn told the

entirety of Deal 105.  SUF ¶ 4.[5]  The FBI then consulted with the DOC and confirmed that Joel Diaz was a corrections officer.  SUF ¶¶ 5-6.[6]  Prior to Joel Diaz's arrest, the FBI possessed photographs and background documents of Joel Diaz since August 5, 2010.  SAF ¶ 1.  Pursuant to the FBI's investigation, an indictment was filed against eight defendants on September 12.  SUF ¶ 7.  Included in that indictment was Joel Diaz, on a drug trafficking charge.  SUF ¶ 8; Docket No. 5-1, at 16, 18.  That same day, an arrest warrant for Joel Diaz was issued.  SUF ¶ 9.  He was arrested on October 6.  SUF ¶ 10.

On October 8, the government filed a motion to release Joel Diaz on his own recognizance, and he was immediately released from custody.  SUF ¶ 11.  On October 13, the government filed a motion to dismiss the indictment as to Joel Diaz.  SUF ¶ 12.  The next day the, the court entered a judgment of discharge dismissing the charges against Joel Diaz with prejudice.  SUF ¶ 13.

On March 14, 2013, plaintiffs sued the government for damages for negligent investigation and "wrongful arrest and incarceration."   Docket Nos. 1-1, 5-1.  The

---

FBI, that Joel Diaz was involved in Deal 105.  There is no hearsay problem because the statement is not being offered for the truth of the matter asserted.  *See* Fed. R. Evid. 801(c)(2).  The statement relates only to what information the FBI had to establish probable cause to seek an indictment against Joel Diaz, not whether Joel Diaz in fact provided security for Deal 105.  The government acknowledges that the information relayed by the CHS was inaccurate.

[5] Plaintiffs object to SUF ¶ 4 because the answer to interrogatories supporting it is inadmissible hearsay not based on personal knowledge.  CUF ¶ 4.  Plaintiffs state that answer refers to communications between the CHS and Velez, not Qulinchini.  I find that the statement is admissible.  As stated above, Quilinchini was the S/A in charge of Joel Diaz's arrest and was the co-handler for the CHS involved in Deal 105.  Docket. No. 50-3, at 2; Docket No. 46-1, at 6.  From this it can be readily inferred that Quilinchini would have been intimately familiar with Deal 105 and the participation of any person in the transaction, as well as what name they go by during the transaction.

[6] Plaintiffs purport to deny the fact that the FBI took steps to confirm that Joel Diaz was employed as a corrections officer.  CUF ¶ 6.  They claim that the FBI had, prior to Joel Diaz's arrest, photographs and other identifying material that could have been used to discover that Joel Diaz was, in fact, not the person in Deal 105.  However, plaintiffs do not cite to evidence that the government had pictures of Velez prior to Joel Diaz's arrest.   Further, the evidence that plaintiffs cite to shows that the FBI consulted the DOC to identify Joel Diaz as a corrections officer, supporting the government's statement.  Docket No. 51-1, at 3.  Consequently, the statement is adequately supported by evidence in the record and is admissible.

government filed a Rule 12(b)(6) motion to dismiss plaintiffs' claims.  Docket No. 27.
Plaintiffs responded.  Docket. No. 30.  The then-presiding district judge granted the
government's motion to dismiss plaintiffs negligent investigation claim but denied
dismissal of the false arrest and imprisonment claim on July 9, 2014.  Docket No. 35.

## DISCUSSION

The FTCA  permits actions against the United States for claims of "assault, battery,
false imprisonment, false arrest, abuse of process, or malicious prosecution" that arise from
the "acts or omissions of investigative or law enforcement officers of the United States
Government."  28 U.S.C. § 2680(h); *Solis-Alarcon v. United States*, 662 F.3d 577, 583 (1st
Cir. 2011); *Abreu-Guzman v. Ford*, 241 F.3d 69, 75 (1st Cir. 2001).  The "law of the place"
where the alleged act or omission occurred governs actions under the FTCA.  28 U.S.C. §
1346(b)(1).  Here, Puerto Rico law applies.  *See Abreu-Guzman*, 241 F.3d at 75; *Nogueras-
Cartagena v. United States*, 172 F.Supp. 2d 296, 312 (D.P.R. 2001).

### *Law of the Case*

Plaintiffs argue, without elaboration, that the court's earlier order denying the
government's Rule 12(b)(6) motion as to Joel Diaz's false arrest and imprisonment claim
constitutes the law of the case. Resp. ¶ 1; Docket No. 35.  Insofar as this argument is made,
it may be disposed of briefly.

Under the law of the case doctrine, "when a court decides upon a rule of law, that
decision should continue to govern the same issues in subsequent stages in the same case."
*United States v. Wallace*, 573 F.3d 82, 88 (1st Cir. 2009).  The law of the case has two
branches.  *Negron-Almeda v. Santiago*, 579 F.3d 45, 50-51 (1st Cir. 2009).  The first
branch, clearly not implicated here, "prevents relitigation in the trial court of matters that
were explicitly or implicitly decided by an earlier appellate decision in the same case."  *Id.*
at 50 (quoting *United States v. Moran*, 393 F.32 1, 7 (1st Cir. 2004)).  The second branch
"contemplates that a legal decision made at one stage of a criminal or civil proceeding

should remain the law of the case throughout the litigation, unless and until the decision is modified or overruled by a higher court." *Id.* at 50-51.

Plaintiffs misapprehend the law of the case doctrine.   "Interlocutory orders, including denials of motion to dismiss, remain open to trial court reconsideration, and do not constitute law of the case." *Id.* at 51 (quoting *Pérez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994)).   The district court's order denying the motion to dismiss as to Joel Diaz's false arrest and imprisonment claim found that plaintiffs had pleaded sufficient facts to state a claim for false arrest and imprisonment, but did not dispose of the rights and liabilities of the parties and was therefore not a final judgment; consequently the law of the case doctrine does not bar the government from presenting this motion.   More importantly, the district court noted "summary judgment would be a more appropriate vehicle to determine whether plaintiffs . . . had produced [evidence showing] genuine issues of fact regarding . . . whether the grand jury indictment against Joel Diaz was wrongfully obtained."   Docket No. 25, at 16.   The question before us now is whether plaintiffs have produced such evidence.

## I. Government's Motion for Summary Judgment

### A. False Arrest and Imprisonment

A claim for false arrest or false imprisonment accrues under Puerto Rico law when "[a] person, whether or not a law enforcement officer, . . . by himself or through another one unlawfully detains[s] or cause[s] the unlawful detention of another person." *Ayala v. San Juan Racing Corp.*, 12 P.R. Offic. Trans. 1012, 1021 (P.R. 1982).   False arrest and false imprisonment claims share identical elements not raising a relevant distinction in this case; consequently, the court treats them as identical causes of action.   *See Abreu-Guzman*, 241 F.3d at 75; *Rodriguez v. United States*, 54 F.3d 41, 44 (1st Cir. 1995).   For convenience, I refer to Joel Diaz's claim solely as one for false arrest.

The government argues that because Joel Diaz was duly indicted and arrested pursuant to a warrant, his false arrest claim cannot stand.  I agree.  When an arrest is made pursuant to a valid warrant, law enforcement officers are not generally liable for false arrest because the arrest is conditionally privileged.  *Rodriguez*, 54 F.3d at 45.  The First Circuit has held that, as a matter of Puerto Rico law, officers are protected by the doctrine of "conditional privilege" as long as "the arrestee was (a) . . . a person sufficiently named or otherwise described in the warrant and [was] reasonably believed by the [officer] to be the person intended, or (b) although not such person, . . . knowingly caused the actor[s] to believe [her] to be so."  *Id.* at 46 (quoting Restatement (Second) of Torts § 125).  "The privilege attaching to the conduct of a government employee acting within the scope of his employment likewise has been recognized as a defense available to the United States in actions based on the so-called intentional torts enumerated in FTCA § 2680(h)."  *Id.* at 45.  Here, it is undisputed that Joel Diaz was arrested under a warrant bearing his name.  His arrest was therefore conditionally privileged, and the government cannot be held liable for false arrest.

The Puerto Rico Supreme Court's decision in *Valle v. Commonwealth of Puerto Rico*, 157 D.P.R. 1, 11 (P.R. May 14, 2002) (slip official translation), does not, contrary to plaintiffs' contention, compel a different conclusion.  There, the court addressed an illegal arrest and incarceration claim by a defendant mistakenly arrested pursuant to an arrest warrant filed for "John Doe I."  *Id.* at 2.  The warrant contained only a description of the suspect, and the arresting agent stated that the defendant bore "some resemblance" to that description.  *Id.* at 2-3.  The court found the arresting officers liable, despite their possession of a warrant, reasoning that they had not taken adequate steps to ensure that the person they arrested was the one described in the warrant.  *Id.* at 20-21.

*Valle* is inapposite to this case. It distinguished circumstances where the identity of a suspect is easily discovered from those situations where all that is available is a suspect's nickname or a physical description, and stands only for the responsibility officers

have in the latter situation.  *Id.* at 10-11.  Here, the arrest warrant was issued for the arrest of "Joel Diaz Nieves." Docket No. 46-3.  Since the warrant for Joel Diaz's arrest explicitly listed his name and surname and not a mere description of an unidentified person, *Valle* is not controlling.

For these reasons, I find that Joel Diaz has no viable false arrest claim.

### B.      Malicious Prosecution

The fact that Joel Diaz has no viable false arrest claim does not necessarily mean he has no claim at all.  The government correctly notes that, "as a general rule, an unlawful arrest pursuant to a warrant will be more closely analogous to the common law tort of malicious prosecution." *Meehan v. Town of Plymouth*, 167 F.3d 85 (1st Cir. 1999).   A recent case addressing an FTCA false arrest claim under Puerto Rico law noted that "once a person is held pursuant to legal process, the proper claim is one for malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." *Paret-Ruiz v. United States*, No. CIV. 11-1404 SCC, 2014 WL 4729122, at *3 (D.P.R. Sept. 23, 2014) (quoting *Wallace v. Kato*, 549 U.S. 384, 389 (2007), *appeal docketed*, No. 14-2134 (1st Cir. Oct. 30, 2014).   And an arrest pursuant to an arrest warrant and an indictment is "a classic example of the institution of legal process." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

Here, it is undisputed that Joel Diaz was arrested pursuant to a warrant and an indictment.  Consequently, he was held pursuant to legal process, not in its absence. Further, Joel Diaz argues that the FBI submitted "false/wrong information to the grand jury regarding the culprit of the drug transaction."  Resp. at 15.  Such a claim refers to the wrongful institution of legal process in the obtaining of a grand jury indictment, not the absence of legal process in Joel Diaz's arrest.  As such, I shall consider Joel Diaz's possible malicious prosecution claim on the merits.

To prove malicious prosecution under Puerto Rico law, a plaintiff must show: "1) that a criminal action was initiated or instigated by the defendant; 2) that the criminal action terminated in favor of plaintiff; 3) that defendants acted with malice and without probable cause; and 4) that plaintiff suffered damages." *Barros-Villahermosa v. United States*, 642 F.3d 56, 58 (1st Cir. 2011) (quoting *Gonzalez-Rucci v. U.S. INS*, 405 F.3d 45, 49 (1st Cir. 2005)).  The government argues that it is entitled to summary judgment because plaintiffs can show neither the absence of probable cause nor the presence of malice, both of which are required to sustain a malicious prosecution claim.  *See Gonzalez-Rucci v. U.S. I.N.S.*, 539 F.3d 66, 71 (1st Cir. 2008).

Probable cause has been defined, in the context of a malicious prosecution claim, as a "suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." *Abreu-Guzman*, 241 F.3d, at 75.  "Said question does not depend upon whether or not the offense was committed, but on the belief of the accuser in the truth of the charge made by him." *Harrington v. United States*, 748 F. Supp. 919, 933 (D.P.R. 1990) (quoting *Raldiris v. Levitt & Sons of P.R., Inc.*, 103 D.P.R. 778, 781 (1975)).  Generally, "a grand jury indictment definitively establishes probable cause." *Gonzalez-Rucci*, 405 F.3d at 49.  However, this presumption of probable cause may be rebutted, for example, by evidence that the indictment was obtained through the use of perjury.  *Id.*

Plaintiffs' theory is that prior to Joel Diaz's indictment, the FBI had both photographs of Joel Diaz and video recordings of Velez, the real culprit.  There was no probable cause to indict Joel Diaz, plaintiffs claim, because a comparison of the photos and videos showed, or should have showed, that Joel Diaz was not the corrections officer using his name in Deal 105.

The record, however, does not support plaintiffs' assertion that the FBI had videos of Velez at any point prior to Joel Diaz's arrest.  The only evidence that arguably supports their position is an FBI report describing a conversation between Joel Diaz and an agent

while the former was being taken into custody.  Docket No. 51-9.  According to the report, the agent showed Joel Diaz a photograph of a Hispanic male sitting on a sofa at an apartment and asked him if he was the person in the photograph.  *Id.*  Joel Diaz responded that he did not look like the person in the photograph and went on to state that he had not done anything wrong and had no idea why he was being arrested.  *Id.*  The agent then advised Joel Diaz that he would have an opportunity to clear his name at a later date.  *Id.*

It cannot reasonably be inferred from this scant evidence that Joel Diaz's indictment was not based on probable cause.  First, the date of the photograph shown to Joel Diaz is not known and, even viewing the evidence in the light most favorable to plaintiffs, it cannot be presumed that the government had this photograph when initiating the indictment. Second, even if the government did have the photo pre-indictment, and even assuming it was different enough from Joel Diaz's photo to clearly suggest a chance of mistaken identity, plaintiffs have provided no evidence that it was withheld from the grand jury.  It is their burden to prove government misfeasance sufficient to defeat the presumption of probable cause generated by Joel Diaz's indictment.  No reasonable juror could infer from the current record that the grand jury received tainted information regarding Joel Diaz's identity.

Bearing in mind that, as stated above, failure to prove absence of probable cause is sufficient to defeat a malicious prosecution claim, I turn to whether plaintiffs have shown a genuine issue as to malice.  Puerto Rico courts equate malice with bad faith.  *Barros-Villahermosa*, 642 F.3d at 59.  To prove malice, plaintiff must show that the accusation was: "(1) capricious and (2) without a rational basis."  *Ramon Riefkohl v. Villegas Henriquez*, No. EDP2009-0379, 2011 WL 6433307, at *9 (P.R. Cir. Sept. 30, 2011) (citing *Jimenez v. Sanchez*, No. 11014 SOMETIDO 1, 1954 WL 10846 (P.R. Apr. 19, 1954).

For the same reasons I find that plaintiffs have presented insufficient evidence to defeat the presumption for probable cause, I find that plaintiffs have failed to show there exists a genuine issue of fact that any government actor acted capriciously or without a

rational basis at any point during the institution of legal process against Joel Diaz.  The CHS reported to the FBI that a man claiming to be Joel Diaz approached him to work as security for Deal 105.  SUF ¶¶ 2-3.  A subsequent investigation of the name revealed that the name belonged to a corrections officer, falling within the purview of Operation Guard Shack.  SUF ¶¶ 1, 5.  This, I find, is sufficient rational basis to seek an indictment and arrest warrant for Joel Diaz.

I note, as a final thought, that the theory of improper conduct now pressed by plaintiffs is essentially identical to the theory underlying their negligent investigation claim, which the court previously dismissed.  *See* Docket No. 5, at 7. They basically claim that the government should have done a better job identifying the right corrupt corrections officer.  Plaintiffs seem to misapprehend the difference between negligence and malice under Puerto Rico Law. "The element of malice, so essential in [malicious prosecution] cases, must not be confused with mere negligence, characterized by inadvertence, or the complete absence of an intention to prejudice, while malice is characterized by the purpose to prejudice, harm, and injure." *Jimenez v. Sanchez*, No. 8378, 1942 WL 6900 (P.R. Feb. 6, 1942).  And, such malice "should be perfectly alleged with facts, and never with mere legal conclusions, without even establishing the facts they are derived from." *Id.*  Plaintiffs have not alleged facts indicating that the FBI acted with the intent to harm Joel Diaz, but merely that they suffered harm as a result of an alleged failure to verify the identity of Velez.

The government's motion for partial summary judgment as to Joel Diaz's malicious prosecution claim is therefore granted.

## II.   *Plaintiffs' Partial Cross-Motion for Summary Judgment as to Joel Diaz*

Plaintiffs argue that, for the same reasons they allege the government is not entitled to summary judgment, they are entitled to summary judgment as to Joel Diaz's false arrest and malicious prosecution claim. *Resp.* at 15.

For the same reasons discussed above, I find that Joel Diaz has no viable false arrest claim and has failed to prove the necessary elements to succeed on the malicious prosecution claim.  Plaintiffs' cross-motion for partial summary judgment as to Joel Diaz's false arrest claim and malicious prosecution claim is therefore denied.

## CONCLUSION

For the above reasons, the government's motion for partial summary judgment is **GRANTED** and plaintiffs' cross-motion for partial summary judgment is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of July, 2015.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge